IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

KERUZIS-THORSON V. THORSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

AUDREY A. KERUZIS-THORSON, APPELLANT,

V.

JASON W. THORSON, APPELLEE.

Filed March 20, 2018.    No. A-17-499.

Appeal from the District Court for Cass County: MICHAEL A. SMITH, Judge. Reversed and remanded with directions.

Julie E. Bear, of Reinsch, Slattery, Bear & Minahan, P.C., L.L.O., for appellant.

No appearance for appellee.

MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

ARTERBURN, Judge.

### INTRODUCTION

Audrey A. Keruzis-Thorson appeals from an order of the district court for Cass County dissolving the parties' marriage. Audrey argues that insufficient evidence exists to support the district court's decision to enter a judgment in favor of Jason W. Thorson for premarital debt incurred by Audrey. Audrey also argues the district court erred in granting Jason a credit on its child support calculation for the payment of health insurance costs attributable to the minor child. For the reasons set forth below, we reverse and remand with directions.

### BACKGROUND

We first note that while the dissolution proceedings occurred over 4 days, our issues on appeal are limited to those listed above. Much of the evidence at trial centered on custody of the

minor child, which we will not discuss. We note that while Jason was represented by counsel at trial, he has not filed a brief on appeal.

The parties were married on April 13, 2013, and had one minor child during the marriage. During the course of the marriage, the parties resided in the home of Audrey's parents. They did not pay rent or utilities, but Audrey and Jason made improvements in the basement area where they resided. During the marriage, Audrey did not work outside of the home. Jason was the sole source of income for the family, working as an HVAC technician at three different companies at different points in the marriage. The parties agreed at trial that for purposes of child support calculation, Audrey's earning capacity be utilized at $10 per hour for 40 hours per week. At the time of dissolution, Jason earned $23 per hour working 40 hours per week.

According to Audrey she entered the marriage with existing debt between $6,000 and $7,000. Jason testified that he believed Audrey had $12,000 in debt prior to their marriage. Both parties testified that they took out a consolidation loan during the marriage which was secured by a Saturn automobile Audrey owned prior to the marriage and was owned clear of any liens. Both parties also agreed that the Saturn was traded in for a Mitsubishi Outlander, which was awarded to Audrey in the decree.

Audrey testified at trial that the consolidation loan secured by the Saturn had been paid down to some extent, but much of the remaining debt associated with that loan was "rolled into" the loan to buy the Outlander. Audrey testified that the value of the Outlander was $14,000 at the time of trial and that the debt associated with the loan securing the Outlander was $24,645.85. However, neither the purchase agreement for the Outlander or the loan documents for the financing of the purchase were presented at trial. Therefore, there is no documentation in the record of what amount was "rolled into" the new loan. Audrey testified that she believed $3,500 remained on the loan secured by the Saturn at the time the parties took out the loan for the Outlander. Jason testified that $1,500 remained on the consolidation loan. Both parties agreed that the Saturn was traded in for the Outlander. Jason believed the car dealer allowed about $1,500 for the trade-in.

Jason testified at trial that Audrey entered the marriage with $12,000 in preexisting debt. He testified that they took out a consolidation loan and the credit union issued payments to each of the creditors to which Audrey was indebted. The court received, over an objection, Exhibit 79 which was a compendium of checks issued by the lender, Centris Federal Credit Union (Centris), directly to various creditors. The creditors included: Nebraska Furniture Mart, Capital One, Commenity Bank, American Eagle, and Wells Fargo, The total amount distributed to the creditors was $7,674.30. Jason testified that Audrey also came into the marriage with some medical debt and student loan debt.

Audrey testified that their minor child received health insurance through Medicaid. Jason testified that he also provided health insurance for their daughter through the Affordable Care Act, not his employer. Jason's child support calculation at trial, however, provided for no deduction based on health insurance premiums paid for the minor child. It did provide for a deduction in the sum of $199 per month for premiums paid to cover Jason. No evidence was adduced that differentiated between premiums paid for Jason and the minor child.

The district court in its decree originally determined that Audrey was awarded property valued at $1,870 and Jason was awarded property valued at $960. The district court found the evidence regarding the value of each parties' respective vehicle to be in dispute and for purposes

of division, found that each party was awarded his or her own vehicle subject to the indebtedness thereon and further found that the value of each vehicle was equivalent to the debt. The court went on to order each party to pay any debt which he or she incurred after marriage along with any debt which he or she had incurred following separation. The decree further provided that Jason had an obligation to provide health insurance for the minor child only if the same was available to him through his employment. It also provided Jason with a credit of $193 for health insurance premiums paid on behalf of the parties' child.

Following the filing of the decree, Jason filed a motion for new trial. Jason argued that the district court omitted Audrey's premarital debt from its division of the assets and liabilities. In its order on the motion, the district court determined that it had failed to adequately address the debt brought into the marriage by Audrey. The court found that Audrey's premarital debts totaled $12,000, and ordered Audrey to pay that amount to Jason.

Audrey appeals here.

## ASSIGNMENTS OF ERROR

Audrey argues the district court erred in (1) entering a judgment in favor of Jason for premarital debt and (2) granting Jason a credit for the payment of health insurance costs attributable to the minor child.

## STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Sellers v. Sellers*, 294 Neb. 346, 882 N.W.2d 705 (2016). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id.* A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Devney v. Devney*, 295 Neb. App. 15, 886 N.W.2d 61 (2016).

## ANALYSIS

### DIVISION OF MARITAL ESTATE

Audrey argues the district court erred in awarding Jason a $12,000 judgment following Jason's motion for new trial. Audrey argues that Jason did not provide sufficient evidence to establish the amount of alleged premarital debt held by Audrey and then trace how much of that debt was retired with marital funds. In the alternative, she argues at most the evidence establishes a maximum figure of $7,674.30 in premarital debt that was retired during the course of the marriage. She further argues that since she was awarded the debt on the Outlander, she has already been made responsible for whatever premarital debt was rolled into the Outlander loan. Therefore, she argues that by imposing the additional obligation, the district court is requiring her to pay premarital debt twice.

Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of marital property is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and determine the marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance

with statutory principles. *Marshall v. Marshall*, 298 Neb. 1, 902 N.W.2d 223 (2017). Separate property or liabilities become marital property by commingling if they are inextricably mixed with marital property or with the separate property of the other spouse. *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016). If the separate property remains segregated or is traceable into its product, commingling does not occur. *Id.* The burden to show that a debt is nonmarital is on the party making that assertion. *Fetherkile v. Fetherkile,* 299 Neb. 76, ___ N.W.2d ___ (2018). The ultimate test in determining the appropriateness of a property division is fairness and reasonableness as determined by the facts of each case. *Brozek, supra.*

Jason claims that Audrey entered the marriage with $12,000 in premarital debt. However, the only evidentiary documentation offered by Jason was Exhibit 79, which demonstrated $7,674.30 paid from Centris directly to specific creditors. The testimony elicited from both parties indicate that these debts were Audrey's and were premarital. These debts were paid off from a consolidation loan obtained by both parties from Centris. Jason testified that additional premarital debt incurred by Audrey, including a student loan and medical expenses were also paid off with marital funds. On Exhibit 52, the total amount of premarital debt that Jason attributes to Audrey is $14,074.30. In its order on Jason's motion for new trial, the district court found that there was evidence that Audrey's mother had paid off some of the student loan debt. The court then found that $12,000 of premarital debt remained and by implication, found that this amount had been paid off with marital funds.

We cannot find in the record any documentation of more than the $7,674.30 in premarital debt paid from marital funds. In his testimony, Jason made reference to a Centris line of credit which was used to pay off premarital debt. However, he provided no statements from that line of credit documenting these payments. Moreover, in the parties' joint property statement, he lists the indebtedness on the line of credit as marital debt. Given this lack of documentation, we find that the district court abused its discretion in finding that Jason met his burden of proving that Audrey brought $12,000 in premarital debt into the marriage and that the debt was retired with marital funds. We do find that Jason met his burden of proving that $7,674.30 of Audrey's premarital debt was paid off by virtue of the Centris consolidation loan. However, our analysis is not yet ended.

The question remains as to how much of the original consolidation loan was paid off during the course of the marriage and by implication, how much of the premarital debt was awarded back to Audrey by virtue of the court's award of the Outlander loan to her. Payments were obviously made to the creditors with funds from the consolidation loan, but this loan was eventually replaced with the new loan through Centris for the purchase of the Outlander. Both parties testified that there was an amount still owing on the consolidation loan and that the amount was added to the new loan on the Outlander. Audrey testified that $3,500 was rolled over into the new loan while Jason contends that approximately $1,500 was utilized. Both parties agree that the Saturn was a premarital asset belonging to Audrey when it was traded in for the Outlander. Audrey did not testify to the trade-in value of the Saturn. Jason testified that he believed they received $1,500 for the trade-in value of the Saturn, which was used to offset the remaining balance on the consolidation loan. Under Jason's version of the facts, at least $1,500 of the $7,674.30 paid to the creditors would have been retired by virtue of Audrey's nonmarital asset. Therefore, at least that amount should be deducted from any judgment that should be imposed on Audrey to repay Jason for premarital debt paid off during the marriage.

From the testimony we cannot discern definitively what the trade-in amount for the Saturn totaled, nor what additional amount for the consolidation loan was added to the loan for the Outlander. Either party could have offered the loan documents and the vehicle sales contract, but did not do so. We find that a minimum of $1,500 and a maximum of $3,500 should be deducted from the $7,674.30 proven as Audrey's premarital debt paid off by virtue of the consolidation loan. Since we did not view the parties' testimony, however, we are not in a position to assess their credibility. Therefore, we must remand this issue to the district court to determine how much of a credit should be afforded Audrey based on these factors. Under our ruling, the maximum amount Audrey could be responsible for would be $6,174.30. The minimum would be $4,174.30.

HEALTH INSURANCE CREDIT

Audrey argues the district court erred in granting a credit to Jason for payment of health insurance premiums on behalf of their minor child in its child support calculation. Audrey argues that there was insufficient evidence to support the credit as Jason had not obtained health insurance for their minor child through his employment. Additionally, Audrey argues that Jason did not provide sufficient evidence that he had obtained health insurance for the minor child through the Affordable Care Act.

At trial, Audrey testified that their child was covered by Medicaid. Jason testified that he was also providing health coverage for the child, not through employment, but rather through the Affordable Care Act. However, in his own proposed child support calculation, Jason did not claim any credit for health insurance premiums paid by him on behalf of the child. The district court in the decree allotted a monthly health insurance credit for the child in the sum of $193.00. The court also found that Jason only had an obligation to provide health insurance for the child if the same was available to him through his employment. The exhibit offered by Jason in support of the health insurance premium expense did not identify any differential between individual coverage and coverage for the child.

We find that the district court abused its discretion in allowing Jason a credit for insurance premiums paid on behalf of the child. Given the evidence adduced, coupled with Jason's own failure to compute an amount attributable to his child's health insurance cost on his own calculation, we cannot find that sufficient evidence exists to support the court's finding. Therefore, we reverse the decision of the district court regarding the health insurance credit awarded for the child and remand the matter to be recalculated with no credit granted to Jason for health insurance paid on behalf of the child.

CONCLUSION

We conclude that the district court abused its discretion in awarding a judgment of $12,000 to Jason in its order on a motion for new trial. We determine that the award should be reduced to a sum between $4,174.30 and $6,174.30. We remand this issue to the district court for determination of the amount due. Finally, we find the district court abused its discretion in awarding Jason a health insurance credit for the minor child and remand the matter to be recalculated excluding the credit.

REVERSED AND REMANDED WITH DIRECTIONS.